# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDAL L. RICHARDSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 12-3106-CV-S-ODS-P |
| | ) | |
| JAY CASSADY, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Boonville Correctional Center in Boonville, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and 2009 sentences for first-degree burglary, kidnapping, first-degree tampering, and two counts of second-degree domestic assault, which were entered in the Circuit Court of Greene County, Missouri. Petitioner's convictions were affirmed on direct appeal (Doc. No. 19; State v. Richardson, 304 S.W.3d 280 (Mo. Ct. App. 2010)), and petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied (Respondent's Exhibit K). Petitioner raises four (4) grounds for relief. Respondent contends that Grounds One and Three are procedurally defaulted and, alternatively, are without merit, that Ground Two is without merit, and that Ground Four is moot.

## FACTUAL BACKGROUND

In affirming petitioner's conviction and sentence, the Missouri Court of Appeals, Southern District, set forth the following facts:

> At his arraignment on November 17, 2006, Appellant was represented by
> Cristy Meadows, an attorney with the Missouri State Public Defender ("MSPD").

His case was then transferred to Attorney Michael Lutke ("Attorney Lutke"), who was also with the MSPD, and Attorney Lutke entered his appearance on January 5, 2007. Appellant had some "difficulty getting along with ..." Attorney Lutke and had several complaints about how Attorney Lutke was preparing his defense. As a result, Appellant "fired" Attorney Lutke; the trial court allowed Attorney Lutke to withdraw from Appellant's case; and the trial court appointed the MSPD conflict office to represent Appellant. In September of 2007, Appellant was granted a continuance of a pretrial hearing.

Thereafter, Appellant was represented for several months by Attorney David Back of the MSPD's conflict office. On December 21, 2007, Attorney Lutke, again, entered his appearance on Appellant's behalf after the MSPD determined his problem with Attorney Lutke was not a true conflict of interest which would have necessitated appointment of conflict counsel; thus, the MSPD insisted Attorney Lutke remain as counsel for Appellant.

Following the re-appointment of Attorney Lutke, Appellant refused to cooperate with him or anyone associated with the MSPD. Appellant refused to meet with Attorney Lutke on numerous occasions, verbally berated him on a regular basis, filed for an order of protection against Attorney Lutke and sued Attorney Lutke in federal court. Accordingly, in February of 2008, the MSPD filed a motion to withdraw from Appellant's case and asserted that Appellant's repeated failure to cooperate with his appointed attorneys amounted to a forfeiture of his right to counsel. At the hearing on this motion, the trial court advised Appellant of "the substance of the [MSPD] motion" and "warned" Appellant "that if he continues to refuse to cooperate with his appointed counsel, and ... create[s] an irreconcilable difference with his appointed counsel, [he] may be found to have forfeited his right to appointed counsel." Appellant indicated to the trial court that he understood the need for his cooperation and the MSPD then assigned Charlton Chastain ("Attorney Chastain") to represent Appellant.

At a March 25, 2008, hearing, Attorney Chastain appeared with Appellant. However, Appellant repeatedly personally addressed the trial court. He also lodged complaints about the charges he was facing; argued certain of the charges should be dismissed; and filed several pro se motions. At an April 29, 2008, hearing, while Attorney Chastain was attempting to present arguments to the trial court, Appellant interrupted him and insisted on personally addressing the trial court. Appellant then discoursed to the trial court at length about his perceptions of the case, his treatment by the MSPD, and his belief that the State was trying to "stack the deck" against him. On June 3, 2008, the trial court scheduled a hearing on Appellant's pro se motions for July 2, 2008. Then, on July 2, 2008, Appellant requested that the hearings on his pro se motions be continued so that he could subpoena additional witnesses. This request was granted by the trial court; however, on the date of the rescheduled hearing Appellant did not produce any witnesses, and Attorney Chastain aided him

2

by offering argument in favor of Appellant's pro se motions. Appellant then attempted to offer into evidence a memo that had been prepared by an investigator for the MSPD. Attorney Chastain advised Appellant that such a document was work product, which could be prejudicial, and such documents should not be submitted for trial court consideration. Appellant ignored the advice offered by Attorney Chastain and stated:

> [m]y lawyer and I can disagree on this, but I'm requesting as the Defendant, because it's the client, not the attorney who does the time.... I'm the one who has to face the consequences, and I'm making a decision that I have a right to, that you look at these documents.

As such, the trial court reviewed the documents offered by Appellant; found they were irrelevant; and denied Appellant's pro se motions.

On August 14, 2008, Appellant filed his pro se "MOTION TO WAIVE COUNSEL VIOLATION OF (MISSOURI) (SUPREME) COURT RULE 4–8.4, (VIOLATION OF FIFTH) VIOLATION OF SIXTH AMENDMENT, VIOLATION OF FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION." In this motion, Appellant complained about Attorney Chastain's representation and the purported fact that Attorney Chastain "rejected as unnecessary" the motions he deemed important to his defense. He further alleged "there [were] continuous overtones of malice by design, perhaps, because of the recent flurry of civil complaints filed by [Appellant]," and he accused Attorney Chastain of lying as well as other dishonest acts. Appellant then requested he be allowed to represent himself.

On August, 20, 2008, three weeks before Appellant was scheduled to be tried in this matter, a hearing was held on his pro se motion requesting waiver of counsel. At the hearing, Appellant reiterated his complaints against the MSPD; his belief that their attorneys were dishonest and unknowledgeable; and his desire to represent himself. The trial court advised Appellant that typically "defendants do not succeed in representing themselves," and that the trial court would have to ascertain a number of things from Appellant in order to consider his motion. The trial court advised Appellant that if he waived his right to counsel he would "not have the benefit of someone trained in the law to give [him] advice on how to proceed" and his opposing counsel, the State, would "be represented by a person trained in the law;" it advised him "that there will be rules of evidence applied to [his] case and they will apply, whether or not [he understands] them;" it noted "the State will be obligated to prove [him] guilty beyond a reasonable doubt" and he would "be endeavoring then to convince a jury that there is reasonable doubt as to [his] guilt;" it informed him that he "would have the time and place in the trial to present evidence in [his] own defense" and he would "be entitled to present witnesses on [his] own behalf;" it advised him that it was his duty to secure his own witnesses, evidence, and subpoenas and that the State would have the opportunity to question any witnesses

3

called by him; it related that he had a right to testify on his own behalf, but he could not be compelled to do so and "the jury would be instructed that they are to draw no inference from [his] silence if [he chose] not to testify at trial;" it reminded Appellant that if he did testify at trial the State could also ask him "far-ranging" questions about his background including prior criminal convictions; it advised him that even pro se defendants are required to know and "follow the rules of conduct in the courtroom" including information about objections; and that it was "clearly advising [him] that it is against [his] best interest to proceed in this case representing [him]self." Appellant indicated he understood all of the foregoing information and, nevertheless, he desired to waive his right to counsel. The trial court gave Appellant an opportunity to read a written "Waiver of Counsel" form presented to him and thereafter Appellant signed the written waiver. The trial court then granted his pro se motion to waive counsel; reminded Appellant his case was set for trial on September 8, 2008, with a pretrial conference scheduled for September 4, 2008; advised him that if he received the maximum sentence on each count pending against him he would be incarcerated for seventy-six years; and relieved Attorney Chastain of his obligations.

During the September 4, 2008, pretrial conference Appellant filed a motion for a continuance of his trial. Appellant argued he needed a continuance for a month in order to contact witnesses, conduct more legal research, and otherwise prepare for trial. The State objected and argued their case had been prejudiced by myriad delays in that one of its witnesses had passed away and one had been deployed to Iraq. Acknowledging the fact that Appellant had only recently decided to waive counsel, the State asserted Appellant was well aware of the impending court date, knew it was his burden to prepare himself for trial, and asserted he was simply attempting to delay the disposition of his case. Although noting Appellant's case had been continued "perhaps four and as many as six times in the past" at his request, the trial court found it was "unwilling to make a finding that [Appellant's] application for continuance [was] made solely for the purpose of delaying the trial" and granted Appellant's motion for a continuance. A new trial date was set for October 14, 2008.

Pretrial conferences were then held on September 22, 2008; September 23, 2008; and October 9, 2008. At the October 9, 2008, conference Appellant filed another motion for continuance. The trial court found Appellant's "case has been set for trial a long time" and was "continued prior at [his] request with the assurance that [he] would be ready for trial...." Finding that his motion was "made solely for the purpose of delay of the trial," the trial court denied this motion. Appellant then filed a motion to have all the charges against him dismissed due to the "irreparable constitutional injuries" he suffered during the time his case was pending, and he threatened to file "complaints with the federal—the district office ... with the ACLU, everybody ..." asserting he had not gotten "a fair shake in these courts." The trial court denied his motion to dismiss. Appellant then complained about "interference" in preparing his defense such as his inability to easily subpoena and interview

4

witnesses. He was then reminded by the trial court that he had been advised of such perils when he decided to represent himself and Appellant then announced: "I want to—I can't deal with this interference. I want my case to be appointed to the conflict office. I want the public defender's conflict office." When this request was denied by the trial court, he then continued to complain about the "conditions" under which he was working to prepare his defense and he ultimately asked for counsel to be appointed to represent him.

The following day, which was a Friday with the trial set for the following Tuesday, the trial court continued its discussion with Appellant about his request to have counsel appointed "under [his] Sixth Amendment right...." Following argument from both sides, the trial court found that the fact that Appellant waited until "basically ... the eve of trial" to request counsel be reappointed convinced the trial court that his request was made solely for the purpose of delaying his prosecution. The trial court stated that:

> at the pretrial conference yesterday [Appellant] requested a continuance of this trial setting. The Court denied that request for continuance and made the finding that that request for continuance, unlike his request for continuance previously, was made solely for the purpose of delaying the case, and that request for continuance remains denied.
>
> [Appellant] now requests counsel. This Court would find that [Appellant] has made a knowing, a voluntary and intelligent waiver of his right to counsel. That right to counsel no longer exists. It is not something that rests in [Appellant's] pocket and something he can pull out when he desires to use it. It is this Court's finding and opinion that [Appellant] is now playing the system.
>
> . . . .
>
> That there are many cases by the Missouri Courts of Appeal and Supreme Court that would support the proposition that a single [d]efendant should not by strategy be allowed to or even seek to defeat the efforts of this Court to provide due process to either the [d]efendant himself or to all of the other many incarcerated persons that reside, in this case, the Greene County Jail, and this [Appellant] is not entitled to a continuance, and it is an effort by him to further thwart the system.
>
> The effort now to seek counsel is furthering that effort. [Appellant] knows full well that if the Court were to appoint him counsel now that he would be then afforded counsel who would not be prepared

5

> for trial, because he himself has taken over the complete representation of himself. This Court further observes that nothing that has occurred in [Appellant's] difficulty in preparing his case for trial was something that was not specifically discussed with [Appellant] at the time of his waiver of counsel. These frustrations with subpoenas, the difficulty in preparing the case were things that were discussed both on the record and in writing with [Appellant].
>
> . . . .
>
> The case has been set for trial many times, the case has been set for trial while you ... [have] been representing yourself. The Court did grant you a continuance previously, and made the finding at that time that you were not making that request solely for the purpose of delay. The Court can make no such finding at this time. The Court does think your efforts at this time are solely for the purpose of delay.
>
> . . . .
>
> So at this point the Court does not appoint you counsel, you have effectively waived your right to counsel.
>
> . . . .
>
> It is too late. This is the eve of trial, it is too late for me to provide you effective representation, and the case remains set for trial beginning 8:30 in the morning, October 14th, 2008.
>
> A trial in this matter was held on October 14, 2008. At trial, Appellant conducted his voir dire, offered an opening statement, cross-examined a number of the State's witnesses, called several witnesses to testify on his behalf, participated in the jury instruction conference and gave a closing argument. At the close of all the evidence, the jury convicted Appellant of all five charged counts. Thereafter, during the punishment phase of the trial, the State presented evidence that Appellant had a prior conviction for raping a former fiancée and a prior conviction for the battery of his first wife. The jury made its recommendations and those recommendations were followed by the trial court which made the decision to run the sentences concurrently. This appeal followed.

Doc. No. 19, pp. 2-10; <u>Richardson</u>, 304 S.W.3d at 282-86.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. <u>Marshall v. Lonberger</u>, 459 U.S. 422,

432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUNDS ONE AND THREE

In Ground One, petitioner asserts several claims of ineffective assistance of counsel in that Attorney Lutke failed to file for "bond reduction [or] speedy trial," did not endorse petitioner's witnesses, expressed intent to the prosecutor to compromise petitioner's defense, and filed several continuances after he was removed from the case. Doc. No. 1, p. 5. Furthermore, petitioner claims that Attorney Meadows failed to inform petitioner of a conflict of interest and waived petitioner's preliminary hearing without his permission, that Attorney Chastain failed to move to dismiss the case and did not file a habeas corpus in state court in 2008, and that appellate counsel Margaret Johnston "left out several substantial constitutional claims in appellate brief and did not submit case for review to higher state court." Id. In Ground Three, petitioner claims that the trial court "did not protect [his] constitutional rights." Doc. No. 1, p. 8. Specifically, petitioner claims that the trial judge failed to discipline Lutke, refused to admit favorable evidence, and "conducted [petitioner's] jury trial in violation of several constitutional laws." Id. Respondent argues that Grounds One and

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

7

Three are procedurally defaulted in that petitioner failed to raise either ground on appeal of the denial of his post-conviction motion and did not raise Ground Three on direct appeal. Doc. No. 15, pp. 9, 22-24.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id. Petitioner procedurally defaulted Ground One by failing to include it on appeal from the denial of his Rule 29.15 motion and Ground Three by failing to raise it on direct appeal or on appeal from the denial of his post-conviction motion. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In reply, petitioner reiterates his grounds for relief and states that appellate counsel is responsible for failing to raise several of his claims on direct appeal. Doc. No. 18, pp. 6-8. "In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." Evans v. Luebbers, 371 F.3d 438, 445 (8th Cir. 2004) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). "Thus, the

8

assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." Evans, 371 F.3d at 445 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

The constitutional claims in Ground Three that petitioner claims direct appeal counsel failed to raise are vague and conclusory. Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990) ("petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified"). Furthermore, petitioner fails to state with specificity the evidence that was denied by the trial judge, and petitioner's claim that the trial court denied him a speedy trial is contradicted by the record that petitioner filed multiple pro se motions for continuances. See Respondent's Exhibit A, pp. 310-325 (when petitioner requested a continuance on September 4, 2008, the trial judge pointed out that petitioner had already received about 4 to 6 continuances, and petitioner admitted that only "some of those continuances" were from his attorney). Consequently, petitioner fails to establish that direct appeal counsel was ineffective for failing to raise Ground Three. Finally, petitioner fails to present an explanation for why the claims in Grounds One and Three, including his independent claim of ineffective assistance of direct appeal counsel, were not pursued on appeal from the denial of his Rule 29.15 motion.[2] As a result, petitioner fails to demonstrate cause for procedurally defaulting Grounds One and Three.

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent

---

[2] Because petitioner included his claims in his post-conviction motion and defaulted his claims by failing to include them on appeal from the denial of his post-conviction motion, Martinez v. Ryan, 132 S. Ct. 1309 (2012), does not apply. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Martinez offers no support . . . for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

9

of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds One and Three are procedurally defaulted and will be denied.

## GROUND TWO

In Ground Two, petitioner claims that the trial court violated his constitutional right to counsel by denying his request to withdraw his waiver and appoint counsel. Doc. No. 1, p. 6. The Missouri Court of Appeals, Southern District, denied Ground Two as follows:

> In his sole point relied on, Appellant maintains the trial court abused its discretion in overruling his "request to have counsel reappointed a few days before his scheduled jury trial after he had previously waived his right to counsel...." He asserts such a ruling violated "his fundamental rights to counsel, a fair trial, and to due process ..." in that "the trial court's actions deprived Appellant of his right to counsel at a critical stage of the proceedings, and such deprivation requires automatic reversal of his judgment and sentence."
>
> "The Sixth and Fourteenth Amendments of [the United States] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975). "'Criminal defendants are guaranteed th[is] right to counsel, and absent a knowing and intelligent waiver of counsel, no defendant may be imprisoned unless represented by counsel at trial.'" State v. Rawlins, 248 S.W.3d 680, 683 (Mo. App.2008) (quoting State v. Kilburn, 941 S.W.2d 737, 739 (Mo. App.1997)). However, this right can be waived. "Section 600.051 provides that a written waiver of counsel must be made knowingly and intelligently." Id. Specifically, section 600.051.1 sets out that prior to waiving his right to the assistance of counsel a defendant must be presented with a written waiver of counsel "which the defendant has read or which has been read to the defendant before the signing thereof...." This written waiver must inform the defendant:
>
>> (1) That the defendant has been charged with the offense of _____ (nature of charge must be inserted before signing);
>>
>> (2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

> (3) That the maximum possible sentence on the charge is _____ imprisonment in jail and a fine in the amount of _____ dollars or by both imprisonment and fine. That the minimum possible sentence is _____ imprisonment in jail or by a fine in the amount of _____ dollars or by both such confinement and fine;
>
> (4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;
>
> (5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;
>
> (6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

§ 600.051.1. "The waiver must be signed before and witnessed by the judge or clerk of the court" and "[t]he requirements of [s]ection 600.051 are strictly enforced." Rawlins, 248 S.W.3d at 684.

While section 600.051 "allows a defendant to execute a written waiver of counsel, the court's duty to the defendant is not extinguished merely by the signing of the form." City of St. Peters v. Hodak, 125 S.W.3d 892, 894 (Mo. App.2004). "Rather, the court must advise the defendant of the perils of self-representation on the record 'before the trial date, to allow defendant time to choose whether to waive the right to an attorney.'" Id. (quoting State v. Wilbur, 976 S.W.2d 15, 15 (Mo.App.1998)). In such an instance, the trial court

> must make a penetrating and comprehensive examination in order to properly assess that the waiver was made knowingly and intelligently. The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

State v. Watson, 687 S.W.2d 667, 669 (Mo. App.1985) (quoting Faretta, 422 U.S. at 835, 95 S. Ct. 2525) (internal citation omitted).

In his brief, Appellant takes no issue with the trial court's finding that his original waiver of counsel was valid, or that his last minute request for an attorney was anything other than a delay tactic. Instead, as best we discern, he appears to argue that a trial court is categorically required to allow a criminal defendant to

withdraw a previously entered, valid waiver of counsel at any time he so desires.

In support of his proposition, Appellant primarily argues this matter is akin to that found in Fields v. State, 507 S.W.2d 39 (Mo. App.1974), a postconviction relief action under former Rule 27.26. In Fields, the defendant sought "to vacate [his] sentence and to have a new trial upon the single ground ... that he was denied his constitutional right to be represented by counsel at his trial." Id. at 40. . . .

. . . .

The present matter differs from Fields in a number of ways. First, Fields was decided prior to the enactment of section 600.051 and, unlike the instant case, there was no written waiver form read and signed by the defendant. Second, there was little probative evidence in Fields showing that the defendant was requesting the appointment of counsel in order to delay his prosecution, while in Appellant's case there is ample evidence showing that Appellant had been attempting to delay his trial for well over a year. Third, in Fields the trial court did not extensively recite all of the rights and obligations of a pro se defendant; there were no verbal warnings to the defendant of the perils of representing himself; and there was no colloquy between the trial court and the defendant showing he understood what he was getting himself into by representing himself. However, in the present case, in addition to reading and signing the section 600.051 form, as previously set out, Appellant was fully and completely advised by the trial court at length in open court of the issues associated with self representation. Fourth, while the defendant in Fields rushed to trial a mere three days after choosing to represent himself only to discover that he was in over his head, Appellant had been representing himself on and off throughout these proceedings and had already had two months in which to prepare for trial. Here, having been extensively warned about proceeding pro se, Appellant, who had completed three years of college, did not request to have counsel appointed until after his last request for a continuance was denied. Fields certainly does not stand for the proposition that a trial court must immediately and totally acquiesce to a criminal defendant's request for counsel merely to delay his prosecution, particularly, after his right to counsel was validly waived in writing and in open court.

While we agree with the State that there are no Missouri cases exactly on point with the present factual situation, we are guided by the State's references to cases which found that it is within the trial court's discretion to deny motions filed by a defendant which are calculated to delay trial, as well as to deny a defendant's assertions that his constitutional rights were violated when such assertions are made simply to hinder his prosecution. For example, in State v. Parker, 890 S.W.2d 312, 316 (Mo.App.1994), the reverse scenario occurred, in that the defendant filed a motion to proceed pro se a mere day prior to trial and requested a continuance so that he could prepare his defense. The trial court refused this request and ordered the defendant to proceed to trial with counsel. Id. . . .

12

> . . . .
>
> Likewise, in <u>State v. Morton</u>, 648 S.W.2d 642–43 (Mo.App.1983), the trial court found that where the defendant waived his right to a jury trial, the matter was scheduled for a bench trial, and then several weeks before trial he decided to withdraw his jury trial waiver, the defendant was not entitled to withdraw his waiver. On appeal this Court noted that "it appears to be the consensus of courts elsewhere that an accused does not have a constitutional right to withdraw a valid jury trial waiver, and that whether that waiver may be withdrawn is discretionary with the trial court." <u>Id</u>. at 643 (internal citation omitted). . . .
>
> Here, per section 600.051, Appellant read and signed a written waiver form which advised him of the issues he might face in choosing to represent himself. Further, the trial court orally discussed the perils of self representation with Appellant at length in open court and the State even advised Appellant to seek representation. Additionally, the record in this matter is replete with testimony from Appellant about his disdain for and distrust of the MSPD; his civil lawsuits filed against them; his lack of cooperation with the various attorneys that have represented him; his repeated pro se requests for continuances of this matter; and his repeated assertions that he desired to represent himself. At the pretrial hearing in this matter, a mere four days prior to trial, Appellant requested another continuance to continue to prepare his defense, although Appellant had been representing himself at times throughout this matter and he had over two months to prepare his defense since the time his request to proceed pro se was granted. It was only when this request for a continuance was denied that he requested the appointment of counsel. We agree with the trial court that Appellant's right to counsel "is not something that rests in [Appellant's] pocket and something he can pull out when he desires to use it." Appellant waived his right to counsel not only through his written and spoken requests to do so, but also through his repeated attempts to delay the trial in this matter. The trial court did not abuse its discretion in denying his request to have counsel again appointed for him. Point denied.

Doc. No. 19, pp. 10-19; <u>Richardson</u>, 304 S.W.3d at 286-90 (footnotes omitted).

Under the Sixth Amendment, a criminal defendant has a constitutional right to self-representation. <u>Faretta</u>, 422 U.S. at 835. In order to effectuate this right, however, a criminal defendant must knowingly and intelligently forgo the benefits traditionally associated with the right to counsel. <u>Id.</u> Therefore, before a defendant relinquishes his right to counsel, he must be made aware of the disadvantages of self-representation, "so that the record will establish that 'he knows

13

what he is doing and his choice is made with eyes open.'" Id. (Citation omitted).

Nothing in the record even remotely suggests that petitioner proceeded to trial by himself with closed eyes. To the contrary, the record suggests that petitioner was quite knowledgeable in the law for a laymen and freely chose to proceed pro se. See Respondent's Exhibit A, pp. 183-200 (petitioner discusses filing several motions and raises several legal issues in a pretrial hearing). Cf. U.S. v. Kiderlen, 569 F.3d 358, 364 (8th Cir.) ("In making the assessment of a waiver's validity, we look to the particular facts and circumstances in the case, including the background, experience, and conduct of the accused [and] . . . will uphold a district court's grant of a defendant's motion to represent himself if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation.") (internal quotations and citation omitted), cert. denied, 130 S. Ct. 654 (2009). Moreover, the trial judge explained to petitioner the rights he was forgoing by representing himself and advised against self-representation. Respondent's Exhibit A, pp. 151-176. Finally, based upon the transcript provided by respondent, the trial judge fully complied with Mo. Rev. Stat. § 600.051.1. See Respondent's Exhibit A, pp. 174-176 (the trial judge read portions of the waiver, and petitioner stated that he had read the form before he signed it).

Ultimately, the Missouri Court of Appeals, Southern District, found that petitioner made a knowing and intelligent waiver of his right to trial counsel and that the trial court had the discretion to deny petitioner's request for counsel four days before trial as an attempt to further delay the proceedings. Doc. No. 19, pp. 16-19; Richardson, 304 S.W.3d at 289- 290. Because the state court's decision was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2),

14

Ground Two will be denied.

## GROUND FOUR

In Ground Four, petitioner claims that his bail was excessive considering that several of his felony charges were dropped before trial. Doc. No. 1, p. 10. Respondent argues that the issue of pretrial bail is moot once a petitioner is convicted. Doc. No. 15, p. 24. In reply, petitioner cites a quote from State v. Dodson, 556 S.W.2d 938 (Mo. Ct. App. 1977), where the Missouri Court of Appeals, St. Louis District, stated, "Filing an application for a writ of habeas corpus is the proper procedure for contesting the denial of bail." Id. at 945; Doc. No. 18, p. 21.

The Supreme Court, however, has held that a constitutional claim to pretrial bail is moot once the defendant is convicted. Murphy v. Hunt, 455 U.S. 478, 481-82 (1982). The Court explained that the question is no longer live after conviction because even a favorable decision would not entitle a petitioner to bail. Id. As a result, Ground Four is denied as moot.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

15

Case 6:12-cv-03106-ODS   Document 20   Filed 08/14/12   Page 15 of 16

        /s/ Ortrie D. Smith
        ORTRIE D. SMITH
        UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   August 14, 2012 .

16

Case 6:12-cv-03106-ODS   Document 20   Filed 08/14/12   Page 16 of 16